**HUMBLE OIL & REFINING CO. v. COX, Inc.**
**(No. 3526.)**

Court of Civil Appeals of Texas. Texarkana.
March 31, 1928.

Rehearing Denied June 7, 1928.

1. **Principal and agent ⟳137(1)—Liability of principal, if any, if agent exceeds authority conferred or implied by law, is based on estoppel.**

If an agent exceeds authority conferred on him and authority law would imply from that conferred, liability of principal, if any, is referable alone to doctrine of estoppel.

2. **Trial ⟳350(3)—Submission of issue of apparent authority of agent to make contract, not supported by pleading based on contract of duly authorized agent, held reversible error.**

In action to recover damages for breach of contract by defendant alleged to have acted by its duly authorized agent in making oral contract, submission of issue whether agent had apparent authority to make contract was reversible error, where issue was without pleading to support it.

3. **Appeal and error ⟳1078(1)—Assignment of error, not complying with rule of Court of Appeals in presenting same in brief, need not be considered on appeal (Rule 31).**

Assignments of error, not complying with Rule 31 of Courts of Civil Appeals in presenting assignment in brief, need not be considered on appeal.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by Cox, Inc., against the Humble Oil & Refining Company, in which defendant filed a cross-action. Judgment for plaintiff, and defendant appeals. Reversed and remanded for a new trial.

This suit (commenced March 3, 1923) by appellee against appellant was for damages in the sum of $9,000, which appellee alleged it suffered because of a breach by appellant of a parol contract alleged by the former to have been entered into between them on or about April 15, 1922 (appellant acting by its "duly authorized agent," one Monroe), and to have been as follows:

"That plaintiff (appellee) would purchase all gasoline to be used by plaintiff in its business of operating a filling station on the following terms: That it would pay to the defendant (appellant) for such gasoline three cents less than the retail price of such gasoline; that such retail price would be considered to be two cents less than the retail price posted by the Texas Company and the Magnolia Petroleum Company in Dallas, Tex.; that said contract would continue in effect as long as the latter companies should grant what is known as a commercial discount, which is a term used in Dallas and vicinity by the oil trade to indicate a discount to users of gasoline in quantities, as, for instance, a business concern using a fleet of trucks."

Appellee alleged that, after it and appellant so contracted, they "continued to operate under such agreement up to and including April 28, 1922, upon which date the defendant refused to proceed under such contract," and, after alleging that the Texas Company and Magnolia Petroleum Company had "continued up to this date (quoting) to grant the 'commercial discount,'" alleged as follows:

"That for gasoline purchased between April 28, 1922, and May 27, 1922, this plaintiff has settled with the defendant on the basis of said agreement. That between May 27, 1922, and April 15, 1923, plaintiff has used in its filling station 350,000 gallons of gasoline. That plaintiff would have used in its filling station 450,000 gallons of gasoline had defendant complied with its contract and furnished the gasoline as agreed, for the reason that it would have been unable (able?) thereby to undersell its competitors. That at all times during the period between May 27, 1922, and March 1, 1923, the usual and customary discount granted to purchasers of gasoline at wholesale upon the market in Dallas was 3 cents per gallon. That the difference between the market value of gasoline at wholesale in Dallas and the agreed price under the agreement hereinabove set out was 2 cents per gallon on each day upon which plaintiff was compelled to purchase gasoline."

Appellant's answer consisted of a general demurrer, a general denial, and a special plea denying that it or any one authorized to act for it contracted as alleged by appellee; and by a cross-action appellant sought a recovery against appellee of $618.56, which, it charged, was the balance due it on an open account for goods it sold and delivered to appellee during a period beginning April 15, 1922, and ending May 27, 1922. On special issues submitted to them the jury found as follows: (1) That appellee and appellant, the latter acting by its agent one D. T. Monroe, on or about April 15, 1922, entered into an agreement whereby appellee was to purchase of appellant the gasoline it (appellee) sold at retail. (2) Said agreement provided for a differential to appellee of three and two cents, or five cents, "under the posted market prices of the Magnolia Oil Company, the Texas Company, and other big oil companies." (3) By the terms of the agreement, the differential was to continue "for a period (quoting) of one year, or as long during such year as the Texas Company and Magnolia Petroleum Company should grant what is known as the commercial discount of two cents. (4) That said Monroe, at the time he acted for appellant had "apparent authority (quoting) to make such agreement as he made." (5) That neither the Texas Company nor the Magnolia Petroleum Company "effectively discontinued such commercial discount at any time during the year following

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the making of such agreement." (6) Appellant, "prior to the cessation of purchases" by appellee, "under the alleged contract, refused to continue selling" appellee on the basis of the alleged two and three or five cents per gallon differential. (7) Appellee was damaged in the sum of $3,500 "by reason of the refusal" of appellant to furnish gasoline to it "at the alleged differential of 5 cents per gallon during the year following the making of said agreements." The court having rendered judgment in favor of appellee against appellant for the sum found by the jury, the latter prosecuted this appeal.

Davis, Synnott & Hatchell, of Dallas, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

WILLSON, C. J. (after stating the facts as above). As is shown in the statement above, appellee alleged in its petition that appellant acted by its "duly authorized agent" (one Monroe) in making the contract in question. In its answer appellant denied the contract was made by it or by any one authorized to act for it in making same.

That Monroe was appellant's agent at the time the contract was entered into (as alleged) conclusively appeared from evidence heard at the trial. The controversy between the parties with reference to that phase of the case was as to whether the authority of Monroe as such agent extended to the making of the alleged contract or not. Appellant insisted it appeared it did not extend so far; and it seems the trial court took that view of the testimony, for he did not submit an issue as to whether Monroe had such authority or not, but, assuming it conclusively appeared he did not, submitted to the jury, instead, an issue as to whether Monroe had, not actual, but "apparent authority" to make the contract—defining "apparent authority" as the "authority that a reasonably prudent person would believe was given the agent." Appellant objected to the submission of the issue on the ground, among others, that it was without pleadings to support it, and insists here that, in overruling its objection, submitting the issue to the jury, and basing his judgment on their finding in response thereto, the trial court committed error entitling it to a reversal of the judgment.

[1, 2] We think the contention should be sustained. If an agent exceeds authority conferred upon him and authority the law would imply from that conferred upon him, liability of the principal, if any exists, is referable alone to the doctrine of estoppel. "Authority by estoppel," said the Supreme Court of Colorado in Moore v. Switzer, 78 Colo. 63, 239 P. 874, "is not actual but apparent only, and is imposed on the principal because his conduct has been such as to mislead, so that it would be unjust to let him deny it," and, the court added, "estoppel must be pleaded." A like ruling was made by the Court of Civil Appeals at Fort Worth in Rail v. Bank, 3 Tex. Civ. App. 557, 22 S. W. 865, and in Swayne v. Ins. Co., 49 S. W. 518. In the Rail Case the suit was on a verbal contract, as here, which, the plaintiff alleged, was made with the defendant "through its authorized agent." The defendant denied the authority of the agent to act for it in making the contract. The court submitted to the jury a question as to whether the agent had such authority, and, if he did not, as to whether plaintiff had ratified his act or not. In affirming a judgment in the defendant's favor, the court said:

"Appellant complains * * * that the court should have charged the jury that, if the bank held out Nichols as having authority, it would be liable for his contract, though in fact he was not authorized to make it. No such * * * case was set up in his pleadings. * * * We understand the rule in this state to be that an estoppel, which is the principle involved, to be available must be alleged."

And see Lane v. Sullivan (Tex. Civ. App.) 286 S. W. 541; Farmers' Union Co-op. Clearance House v. Guinn (Tex. Civ. App.) 208 S. W. 362; Garrow v. Texas & N. Ry. Co. (Tex. Civ. App.) 273 S. W. 277; Sigel-Campion Live Stock Commission Co. v. Ardohain, 71 Colo. 410, 207 P. 82.

[3] Other questions covered by appellant's fifty-five assignments of error have not been considered—some of them because they are not likely to arise on another trial, and others because appellant has not complied with requirements of rule 31 for the government of Courts of Civil Appeals in presenting them in its brief.

The judgment is reversed, and the cause is remanded to the court below for a new trial.